FRANK P. WEBB, Appellant, v. T. W. COTTON et al.

In Banc, April 13, 1925.

1. **APPELLATE JURISDICTION: Suit by Stockholder: Amount in Dispute: Receivership.** Where the trial court rendered judgment for defendants and refused to appoint a receiver for the corporation, and plaintiff appeals, the facts determining appellate jurisdiction must be gathered from the petition; and where he sues not only for himself, but for all stockholders, and seeks to have the individual defendants account to the corporation for fourteen thousand dollars, alleged to have been lost by their mismanagement of its affairs, and asks for their removal from office as directors and the appointment of a receiver, this court has jurisdiction of his appeal. In such case the petition does not seek to recover such a proportionate part of the fourteen thousand dollars as might finally go to the minority stockholders, but to compel the defendant directors to account to the corporation for the fourteen thousand dollars alleged to have been lost by them, and the amount involved is the sum mentioned.

2. **CORPORATION: Losses: Individual Liability of Directors.** The directors of a corporation, who act in strict accordance with the behests and vote of its stockholders, as shown by its records, in charging off losses incurred in conducting its business and in leasing and selling its properties, are not individually liable to the corporation for the amount of such losses, in a suit by another stockholder and director who took part in the meetings at which the losses were charged off, either in person or by proxy, and if not present knew what was done and made no objection.

Citations to Headnotes: Headnote 1: Courts, 15 C. J. secs. 511, 514. Headnote 2: Corporations, 14a C. J. sec. 1869 (Anno).

Appeal from Carter Circuit Court.—*Hon. E. P. Dorris,* Judge.

AFFIRMED.

*Cunningham & McClellan* for appellants.

(1)  Under Sec. 3366, R. S. 1909 (now Sec. 10171, R. S. 1919), as well as all other statutes under that article, the jurisdiction conferred shall be as in ordinary cases, on petitions filed by or at the instance of any director, trustee or other officer of such corporation having a general superintendence of its concerns, or at the instance of any creditor or stockholder of such corporation. The statutory remedy under Secs. 3364 and 3365, R. S. 1909 (now Secs. 10169 and 10170, R. S. 1919) is cumulative, leaving intact those already existing under the ancient principles of equity jurisprudence.  Clay v. Union Wholesale Pub. Co., 200 Mo. 665; Lamont v. Egg Co., 109 Mo. App. 46; Bertholdt v. Land & Lumber Co., 91 Mo. App. 233; Woodward v. Woodward, 148 Mo. 241; State ex rel. v. Evans, 176 Mo. 310.  Under Sec. 3365, R. S. 1909 (now Sec. 10170), the court has the power to appoint a receiver to take charge of the business of a corporation.  (2)  The board of directors of a corporation are but trustees of an estate for all the stockholders, and may not only be amenable to the law, personally, for a breach of trust, but their corporate power under color of office to effectuate a contemplated wrong may be taken from them when, by fraud, conspiracy or covinous conduct, of extreme mismanagement, the rights of minority stockholders are put in imminent peril and the underlying original, corporate *entente cordiale* is unfairly destroyed.  Cantwell v. Land Co., 199 Mo. 43; Bates v. Werries, 199 S. W. 762; Ward v. Natl. Ice Cream Co., 246 S. W. 554; Cheek v. Prudential Ins. Co., 192 S. W. 387.  In an action wherein defendants are accounting parties, as one occupying fiduciary relations, the burden is on them to show the performance of their trust, and one who is liable to render an account has the burden of proving allowances or credits which he may claim.  1 C. J. 643, sec. 129; Marvin v. Brooks, 94 N. Y. 71; Fox v. Hall, 164 Cal. 287.  (3)  Under Sec. 3349, R. S. 1909 (now Sec. 10154), it is the duty of the trustees or directors to keep correct accounts of all transactions, and to

make out and forward to the stockholders at least once a year a complete statement of the conditions of said corporation for their consideration. Sec. 3364, R. S. 1909 (now Sec. 10169) gives the circuit court jurisdiction over directors, managers, trustees and other officers of corporations in the management of its affairs, and may compel them to account for any official conduct and for any money or property by them acquired, lost or wasted by reason of mismanagement, and to suspend or remove any such officer or director for gross misconduct.

*J. D. Brooks, J. L. Huett* and *W. J. Orr* for respondents.

GRAVES, C. J.—This is an action wherein plaintiff, suing for himself and other stockholders, seeks to have the directors of the Chicopee Lumber Company removed from office because of the alleged gross mismanagement of its affairs from and after the year 1914. The corporation is a party defendant. The plaintiff is not only a stockholder, but was, at the institution of the suit, the president of such corporation, and had been such from the day of its incorporation, in the year 1908. He claims that, by the gross negligence of the individual defendants, losses of the corporation had been suffered to the amount of $14,000, and for such sum he asks that the individual defendants (the directors of the corporation) account for such sum, and that a receiver be appointed.

Application was made for the appointment of a receiver to take temporary charge of the property pending the litigation, but this application was denied. The corporation was not actively engaged in the lumber business (for which it was incorporated, but at the time was getting matters ready for liquidation), and the circuit court made an order upon the directors not to proceed further, but to turn over all books and papers to the clerk of the court to be by him held. In fact the directors were anxious to do this, and rid themselves of the duty.

Upon final hearing the court rendered judgment in favor of defendants, and refused to appoint a receiver. From such judgment we have this appeal.

Webb v. Cotton.

I.   In Division, the opinion of our learned Commissioner, was solely upon the question of our jurisdiction. Upon investigation we are convinced of our jurisdiction. This is an appeal by the plaintiff, and the facts determining jurisdiction must be gathered from his petition. He is not only suing for himself, but for all stockholders, and seeks to have the individual defendants account to the corporation for $14,000, alleged to have been lost to the corporation by their mismanagement of its affairs. The petition does not seek to recover the proportionate part of such sum of $14,000 as might finally go to the minority stockholders, if the directors (individual defendants) were found guilty, and made to account, as prayed by plaintiff. Had plaintiff been successful in getting the court to compel the directors to account for the sum of $14,000, the said sum would have gone to the corporation, and afterward distributed to the stockholders if liquidation was made. In such case the amount involved is the sum alleged in the petition, and such sum gives this court jurisdiction. We have no fault to find with the doctrine of law announced in State ex rel. v. Reynolds, 256 Mo. 710, and Bowles v. Troll, 262 Mo. 1. c. 382, and other similar cases. Those cases simply hold that we will inspect the entire record, and from that determine our jurisdiction. We do that in the instant case. Plaintiff charges that the individual defendants should account to the corporation for $14,000, and having been cast below, upon appeal here, the amount claimed in the petition fixes jurisdiction. So we rule that more than $7500 is involved in this case, and this court has jurisdiction.

II.   We omitted to state that the answer filed met fully all the charges of the very voluminous petition. Respondents have, in an additional abstract of record, brought to this court the full records of the stockholders' meetings of the corporation. They also bring much of the evidence by question and answer, where the appellant has attempted to abstract it in a narrative form.

*Margin note:* Jurisdiction.

The details of this evidence will serve no useful purpose. The corporation was organized in 1908 with a capital stock of $20,000, one-half of which was paid up, some in money and some in timber land. Later alleged profits were (in shape of dividends) credited on stock payments to the extent of twenty-five per cent of the stock, as we gather from the records. Logs were cut, and "logged" down a river to the mill—some coming as far as forty miles, it requiring twenty-seven to twenty-eight days to land a raft from that distance. There were but two experienced timber men in the corporation, i. e. Webb (the plaintiff) and G. E. McSpadden. McSpadden was a practical mill man. He managed the saw-mill of the corporation from 1908 to 1912. At the latter date he quit, because, as he says, he could not make the mill pay. Further, he says that, considering the loss of logs in running them down the river and other facts, the cost of their lumber was greater than what it could be sold for in the market.

All of the records were before the court, and the witnesses testified in detail. The plaintiff and an accountant were the chief witnesses for the plaintiff, although he had others. The testimony tended to show, in a way, that from 1913 to 1916, the management did not make out of the business what should have been made. The matters of charging off large items on the lumber account, and the charging off of bad accounts, are factors (and chief factors) in the trial of the issues. From 1913 to 1916, the plaintiff was afflicted with rheumatism and confined to his bed and home most of the time. He wrote letters to the new manager after McSpadden quit. He was also president and director during all the time. October 5, 1914, there was charged to loss $3,357.78 on lumber account, and $700 on accounts. This was ordered by a stockholders' meeting. In addition to the lumber business the corporation had a store and bought and sold merchandise. The record does not show Mr. Webb to have been present at that meeting, but there is evidence tending to show that he knew what was done, and made no ob-

jection.  At another stockholders' meeting on September 1, 1916, there was a further "charge off" as loss $5,000 on lumber account and $600 losses on accounts.  Webb was present at this meeting, and urged no objection to this proceeding.  At a stockholders' meeting on September 4, 1915, the following happened:

"Now, on motion of T. W. Cotton, seconded by G. E. McSpadden, pending developments, it was voted to liquidate the assets of the concern and pay out to stockholders the amount of $1,200, being six per cent of amount of capital stock, and to reduce other assets to cash."

. At a stockholders' meeting on March 7, 1918, the following appears from their records:

"Now it was voted to submit the following proposition on motion of T. W. Cotton:  That we make them the following proposition:  $5,000 net to us for mill and machinery and buildings on lease on north side of railroad and store building on south side, together with both leases; $2,000 to be paid in cash and balance of $3,000 to be secured by lien on the property sold, notes to be given for said amount; twelve of them in sum of $250 each, one each of said notes maturing each month.

"Directors authorized to close deal on that basis. J. M. Carnahan authorized to submit proposition to proposed purchasers.  Carried by unanimous vote of those present, 190 shares being represented.

"Frank Webb, President.

"J. M. Carnahan, Secretary.

"Directors present:  F. P. Webb, G. E. McSpadden, T. W. Cotton and J. M. Carnahan, and proposition meeting their approval."

Pursuant to this action of the stockholders (in which Webb participated) the property mentioned was sold at the figures fixed.  This property had been carried upon the books as assets at a very much greater value.  Respondents claim and show that the cost of production of lumber was greater than the corporation could sell it for during the years from 1913 to 1915, and these "charge offs" from the lumber account were made necessary by

reason of such fact. It must be further noted that these things were done at stockholders' meetings, and Webb's stock, in person or by proxy, seems to have been voted at all these meetings except that of September 4, 1915. The general course of the business was outlined by the stockholders in their meetings, and the directors simply carried out the directions given at such meetings. The chancellor, *nisi*, had all the parties, and these witnesses before him. He was in better shape to reach the truth of the situation than are we. We can, in such circumstance, abide his judgment, although we hear the case anew here. But in addition to this, the facts of the case are such as to indicate no wrong doing upon the part of the individual directors, sued herein. They seem to have acted strictly in accordance with the behests of the stockholders.

The trial court reached the right result, and its judgment is affirmed. All concur, except *Atwood, J.,* not sitting.