**SCHICK et al. v. RIEMER et al.**

No. 28646.

St. Louis Court of Appeals.

Missouri.

Dec. 15, 1953.

Rehearing Denied Jan. 15, 1954.

Roberts P. Elam, Clifford Greve, St. Louis, for appellants.

Coburn, Storckman & Croft, Clem F. Storckman, St. Louis, for respondents.

HOUSER, Commissioner.

This is a suit by Harry Schick and Walter Ennis, minority stockholders, against Francis Riemer, the majority stockholder, Carl J. Stay and F. Lee Riemer, stockholders, and against the corporation itself, in which plaintiffs seek judgment on the theory that a single, dominant, majority and controlling stockholder has no legal right to vote to pay himself and his subservient nominee assets out of the corporate treasury without the knowledge and approval of, ratification by, or discussion with substantial minority stockholders. The trial court entered a decree for defendants and plaintiffs have appealed.

Genuine Motor Parts, Inc., was incorporated in 1940 by Francis Riemer, Harry Schick and Walter Ennis. All three signed a contract with the Perfect Circle Company in which they agreed that Genuine Motor Parts, Inc. would execute a note for $5,000 to the Perfect Circle Company. Under the terms of the contract Perfect Circle Company advanced $5,000 to Genuine Motor Parts, Inc., which constituted the capital with which the latter concern commenced operations. One thousand shares of stock were authorized and 500 were issued. Two hundred fifty-five shares were issued to Francis Riemer, 122½ shares to Schick and 122½ shares to Ennis. The three constituted the original board of directors. The company prospered and in 1943 by resolution proposed by Schick and Ennis a dividend of $38.60 per share was voted, pursuant to which $19,300 was distributed. Each of the three drew a salary of $3,900.

After the 1943 dividend was declared the 500 shares of unissued stock were sold. Since 1944 the 1,000 shares of capital stock have been held as follows: Francis Riemer, 507 shares; Carl J. Stay, 245 shares; Harry Schick, 122½ shares; Walter Ennis, 122½ shares; Lee Riemer, 3 shares. Prior to the issuance of the 500 shares of unissued stock Francis Riemer transferred one of his 255 shares of stock to his wife and she was elected to the board of directors. Plaintiffs Harry Schick and Walter Ennis thereupon withdrew from active participation as salaried employees of the corporation, and later Carl J. Stay was elected a director, as a result of which plaintiffs were both excluded as directors. Following the declaration of the dividend in 1943 no further dividends were declared during the ensuing 8-year period. The salaries of Francis Riemer and Carl J. Stay were fixed at $125 per week in 1944 by action of the board of directors without consulting plaintiffs, and a resolution adopted in 1945 by the board of directors provided for the payment of a bonus to Francis Riemer and Carl J. Stay of "one-third share each in profits in excess of $4,000 before income taxes." The additional compensation paid by way of bonus to each, Francis Riemer and Carl J. Stay, was as follows: 1946, $3,916.94; 1947, $5,628.67; 1948, $2,432.36.

Our first concern is whether this court has jurisdiction on the ground of the amount in dispute. We have determined that this court and not the Supreme Court has jurisdiction for the reason that less than $7,500 is in controversy. The two plaintiffs are seeking personal judgments for themselves for their part of the $23,955.94 which they claim was improperly paid to Francis Riemer and Carl J. Stay in excessive salaries and bonuses, according to the proportion that their 245 shares bear to the 1,000 shares outstanding. The amount in controversy, therefore, even if we should consider both their interests together, could in no event exceed $5,869.21, which is 245/1000 of $23,955.94. Had this action been a true stockholders' derivative action filed on behalf of the corporation to compel the directors to return to the corpo- ration improper payments of excessive salaries and bonuses, the jurisdiction of this appeal would have been in the Supreme Court on the ground that the relief sought would involve a loss to the individual defendants in excess of $7,500, Merrill v. Davis, 359 Mo. 1191, 225 S.W.2d 763; Webb v. Cotton, 308 Mo. 272, 271 S.W. 768, but the pleadings, proof and record do not disclose that this is a stockholders' derivative action. Consequently this court retains jurisdiction, and as a further result the pleaded defense that the petition does not state a claim upon which relief can be granted must be sustained and the decree for defendants accordingly affirmed.

This is an action by minority stockholders against the corporation and against the directors and officers of the corporation based upon their alleged wilful, wrongful and unlawful appropriation and diversion of corporate funds to their own personal use and benefit and their failure to pay dividends to the complaining minority stockholders. The charging part of the petition alleges that the individual defendants Francis Riemer and Carl J. Stay wrongfully and unlawfully "and in violation of the rights of the *plaintiffs* as minority stockholders" voted excessive salaries and bonuses, diverted profits, improperly mismanaged the business and failed to declare dividends. The petition alleges that under their domination the gross volume of business and net profits decreased as a result of their improper management "to the detriment and loss of *plaintiffs*"; that *plaintiffs'* investment in the corporation was substantial and is in serious jeopardy of being dissipated and wasted and that a continuation of the management of the affairs of the corporation by the individual defendants "will result in irreparable loss and damage to the *plaintiffs*." While plaintiffs further alleged that other stockholders and creditors of the corporation would sustain irreparable loss, plaintiffs did not purport to sue for them. The prayer of the petition was for an accounting of all of the assets and liabilities of the defendant corporation "and of the liabilities of the individual defendants to the defend-

ant corporation," for the appointment of a receiver to manage the business, to preserve and protect the assets of the corporation, and that upon an accounting, each of the *plaintiffs* have "judgment against the defendants, or any or all of them, for such sum or sums as may be found to be due and owing to each of the *plaintiffs* from each and any of the defendants, and for *plaintiffs'* damages * * *." (Emphasis ours.)

At the commencement of the trial plaintiffs abandoned their effort to obtain the appointment of a receiver, agreed that there would be no attack on the accuracy and correctness of the annual financial statements of the corporation, limited the scope of the evidence to the issue of whether the business was being operated properly, and in answer to a question by the court whether the effort was to require the individual defendants to *account* or to *restore* the alleged excessive compensation paid to the officers, counsel for plaintiff stated that they wanted the individual defendants to *account* to the corporation. They further indicated that there would be no evidence on the question of mismanagement.

Stockholders of a corporation cannot in their own right and for their own personal use and benefit maintain an action for the recovery of corporate funds or property improperly diverted or appropriated by the officers and directors of the corporation. In the eyes of the law the injury is to the corporation (i. e. to the stockholders collectively) and not to the stockholders individually. Fletcher, Cyclopedia of Corporations, Per.Ed., Vol. 3, Ch. 11, § 1282; Idem, Vol. 13, Ch. 58, §§ 5913, 5924. The right to maintain the suit is a right of the corporation. Punch v. Hipolite Co., 340 Mo. 53, 100 S.W.2d 878; Bulkley v. Big Muddy Iron Co., 77 Mo. 105; Porter v. Sabin, 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815. There are two principal reasons for denying the right to stockholders. In the first place, a judgment in favor of one stockholder would be no bar to the maintenance of an action by a creditor or by the corporation. Only by repayment to the corporation itself can the rights of creditors or the rights of the corporation be fully protected. Secondly, if every minority stockholder could sue in his own name for his proportionate share of the money due the corporation an intolerable situation might result on account of the filing of a multiplicity of suits.

■■■ There are circumstances in which minority stockholders may institute and maintain a proceeding to compel restoration to the corporate treasury of corporate funds misapplied by the negligence or intentional wrongdoing of directors and officers of the corporation. Before filing such action, however, they must apply for relief to the directorate and to the stockholders, exhausting all remedies within the corporation. See Section 507.070, subd. 2, RSMo 1949, V.A.M.S. They are excused from this preliminary application where the corporation is operating under the control and domination of the wrongdoers, because a request that the latter sue themselves would be a vain and useless undertaking. Punch v. Hipolite Co., supra. In maintaining such a suit the complaining stockholders act as the representatives of the *corporation*. Hingston v. Montgomery, 121 Mo.App. 451, 97 S.W. 202. The suit is a derivative action. The interests of the *corporation* alone are immediately concerned. The suit must be brought in the right of and for the benefit of the *corporation,* Kirrane v. Boone, 334 Mo. 558, 66 S.W.2d 861; Caldwell v. Eubanks, 326 Mo. 185, 30 S.W.2d 976, 72 A.L.R. 621; Dorrah v. Pemiscot County Bank, 213 Mo.App. 541, 256 S.W. 560; 19 C.J.S., Corporations, § 821, pages 223 et seq., and judgment is sought in behalf of the *corporation* requiring that the sums involved be restored to the corporate treasury. See Proctor v. Farrar, Mo.Sup., 213 S.W. 469. Any recovery belongs to the *corporation,* State ex rel. St. Louis Amusement Co. v. Rosskopf, 330 Mo. 1078, 52 S.W.2d 178; Fletcher, Cyclopedia of Corporations, Per.Ed., Vol. 13, § 6028, p. 428, and not to the individual stockholders, and any money judgment awarded must be paid to the *corpora-*

*tion.* State ex rel. St. Louis Amusement Co. v. Rosskopf, supra, 52 S.W.2d loc.cit. 180.

Stockholders are not entitled, however, to recover for themselves for losses occasioned by the wrongful conduct of the directors in the management of the corporate affairs, Caldwell v. Eubanks, supra, 30 S.W.2d loc.cit. 980; Fletcher, Cyclopedia of Corporations, Per.Ed., Vol. 13, Ch. 58, § 5924, p. 283 and cannot sue for the recovery of their proportionate share of money alleged to have been wrongfully abstracted by the officers in salaries from the corporation's treasury. 6 Thompson on Corporations, 3rd Ed., § 4571, p. 465; Rafferty v. Donnelly, 197 Pa. 423, 47 A. 202. If in a particular case the malfeasors are in domination and control of the corporation (so that a decree against them would be the beginning rather than the end of litigation) the court in its decree should provide an efficient remedy for the collection of the judgment by providing that the amount of the recovery be paid into court, there to be administered by an officer designated by the court for that purpose, for the benefit of all persons interested therein. See Proctor v. Farrar, supra, 213 S.W. loc. cit. 477.

In the case at bar plaintiffs, in their petition and in the record, do not purport to maintain the action on behalf of the corporation (or indeed on behalf of other stockholders) as its representatives for an injury to the corporation, to recover sums of money improperly abstracted from the corporation. They do not seek to compel the individual defendants to repay and restore *to the corporate treasury* excessive salaries and bonuses wrongfully and unlawfully voted, paid and diverted to the individual defendants. There is no effort to obtain judgment in the name and right of the corporation. The suit is maintained by plaintiffs for their own personal use and benefit for alleged violations of plaintiffs' individual rights as minority stockholders resulting in loss to them as individuals, for which they seek a judgment against *any or all* of the defendants for the recovery of their proportionate share of the sum of $23,955.94. Instead of promoting the interests of the corporation, the theory of this suit as gleaned from the petition and record is adverse to the interests of the corporation because plaintiffs are seeking to recover their part of the allegedly improperly diverted funds directly and personally and in such a manner that said funds will never be replaced in the corporate treasury for the benefit of the corporation with which to pay expenses of operation, debts, or other legitimate corporate outlays. Thus plaintiffs assert a claim for relief unknown to the law, and must necessarily fail.

It is asserted on this appeal that this is a true derivative action on behalf of the corporation. In support thereof plaintiffs point to that part of the prayer of the petition requesting an order on the individual defendants to make an accounting of their liabilities to the corporation, and to the colloquy between court and counsel at the commencement of the trial in which plaintiffs' counsel stated that the relief plaintiffs were seeking was an accounting requiring the individual defendants to account to the corporation for the excessive compensation to the officers. It is obvious from the petition and record, however, that the purpose for which plaintiffs were seeking an accounting in the trial court was simply to liquidate the amount of their claim, i. e. fix and establish the exact amount unlawfully abstracted from the corporation, so that plaintiffs could recover their proportionate share thereof from the individual defendants. There is nothing in the petition or record to indicate that plaintiffs were proceeding first to establish their right to an accounting, with the intention thereafter of having an actual accounting by which the individual defendants would be required to pay back into the corporate treasury the sum found due. That their ultimate purpose was not to require the individual defendants to restore to the corporation the sums taken from it is the only reasonable inference to be drawn from the exchange between court and counsel at the outset of the trial in which plaintiffs' coun-

sel, in answer to the specific question put by the court whether the relief they were asking was: "an accounting or to restore," answered that it was for an accounting.

Plaintiffs' counsel further point to the statement in their brief in which they ask that the individual defendants be required to restore to the corporate treasury the bonuses unlawfully paid them, and that the court adjudge the payment of dividends to the stockholders out of the surplus in the corporate treasury which will then exist. Incidentally, plaintiffs, in their brief, further request that Francis Riemer be declared a trustee for them of the shares in his name over and above the 33⅓% of the original stock issued to him, and claim that in calculating the amount in controversy for jurisdictional purposes this additional claim brings it to an amount far in excess of $7,500. These arguments would be valid if the petition had been drawn and the case tried on this theory. We must, however, determine the case in the appellate court on the same theory upon which the case was presented below. Heuer v. John R. Thompson Co., Mo.App., 251 S.W.2d 980.

We are cited to a number of cases from other jurisdictions (suits by minority stockholders joining as defendants the directors and officers along with the corporation itself, based upon misapplication of corporate funds by fraudulently paying excessive salaries) in which foreign courts have compelled payment directly to the complainants of their share of the money misappropriated, instead of decreeing repayment into the corporate treasury and thus making it necessary for complainants to resort to another suit to compel the payment of dividends. These cases, for the most part, are collected in a footnote in Fletcher, Cyclopedia of Corporations, Vol. 13, § 6028, p. 431. The statement of the text in support of which these cases are cited follows: "Direct relief to the stockholders cannot properly be adjudged, unless possibly when a dissolution or other exceptional fact warrants or where circuity of action and multiplied litigation will thus be avoided." We do not understand that these cases hold that minority stockholders have an individual, personal action which they may maintain against the erring directors on their own account. But whatever the holding may be in other jurisdictions the Missouri courts have settled the question for us, e. g. Caldwell v. Eubanks, supra, and Dorrah v. Pemiscot County Bank, supra. We need not go outside this jurisdiction for controlling authority. And in Proctor v. Farrar, supra, our Supreme Court has directed the manner in which direct relief may be awarded to complaining stockholders, as we have seen, supra. Counsel for plaintiffs seek to distinguish the Missouri cases on the ground that in them the dereliction on the part of the dominant stockholders and directors constituted mere negligence but did not amount to intentional wrongdoing, viz. stealing and plundering. This is a distinction without a difference. It is immaterial on the question of the right to maintain the suit whether the funds were lost to the corporation through carelessness or by design.

Because the petition fails to state a claim upon which relief can be granted it is unnecessary for us to pass upon the other points raised by appellants. The judgment of the circuit court for defendants was correct for the reasons stated. It should be affirmed and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

BENNICK, P. J., ANDERSON, J., and GEORGE P. ADAMS, Special Judge, concur.