Allen PETERSON and Ronald Peterson, Plaintiffs–Appellants,

v.

Aurelia M. KENNEDY, Defendant–Respondent.

No. 57021.

Missouri Court of Appeals, Eastern District, Division Three.

May 29, 1990.

Jim J. Schoemake, Kenneth J. Barnhouse, St. Louis, for plaintiffs-appellants.

Gregory H. Wolk, St. Louis, for defendant-respondent.

SATZ, Presiding Judge.

Plaintiffs appeal from a summary judgment entered by the trial court in favor of defendant. We affirm.

Plaintiffs, Allen and Ronald Peterson, are minority shareholders of Brooks International Corporation (BIC) and, until February 7, 1984, were employees and officers of BIC. Continental Boiler Works, Inc. (Continental) is the majority shareholder of BIC, and defendant, Aurelia M. Kennedy, was a director of Continental from 1984 to 1988. Plaintiffs sued defendant and two other defendants alleging the three of them were directors and majority shareholders of Continental. The other two defendants did not join in defendant's motion for summary judgment.[1]

In a two count petition, plaintiffs allege two claims which they characterize as a "breach of fiduciary duty" and an "intentional interference with business expectations." According to plaintiffs' petition, this "breach" and "interference" were results of defendant's conduct as a "director", "majority shareholder" or "control person" of Continental.

This is the second action by plaintiffs arising out of allegations that Continental breached a stock restriction agreement it had with plaintiffs. In the first action, plaintiffs sued Continental for breach of the agreement and for punitive damages. A verdict for plaintiffs was reversed and remanded by our Supreme Court for instructional error on the issue of the breach of the agreement and for failure to state a claim entitling plaintiffs to punitive damages. *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896 (Mo. banc 1990).

Whether the summary judgment here was proper rests, in part, on the precise claims that plaintiffs have alleged. Plaintiffs allegations, however, are neither clear nor explicit. The interpretation of plaintiffs' allegations is further complicated by the fact that plaintiffs base their claims on the alleged actions and status of defendant in conjunction with the other two defendants, but the trial court entered summary judgment for this defendant alone. We synopsize those allegations and characterize the claims as we understand them.

## PLAINTIFFS' PLEADINGS

Plaintiffs begin their petition with the following allegations of fact common to both counts. During the time in issue, defendant was a director of Continental, and defendant and the two other defendants were "controlling shareholders of Continental." Plaintiffs and Continental entered into a stock restriction agreement which provides that Continental would purchase plaintiffs' stock in BIC if at any time neither plaintiff is employed by BIC, and also provides a method for determining the value of the stock. Under the terms of the agreement, plaintiffs and Continental would choose a C.P.A. firm which would hire independent appraisers and determine the adjusted book value of BIC's stock. The adjusted book value is defined in the agreement.

Plaintiffs' employment was terminated in February, 1984, and an accounting firm was contacted. The accounting firm chose an appraiser that plaintiffs and Continental apparently accepted. Subsequently, the accounting firm determined the adjusted book value of BIC's stock and set forth two prerequisites to the completion of the audit: receipt of an audited financial statement of BIC and signed "representation letters" from plaintiffs and "the management of Continental."

Defendant, the allegations continue, "caused Continental to refuse to accept the amount of the purchase price" of plaintiffs' stock as determined by the accounting firm. And, "by reason of [defendant's] control of Continental," defendant "willfully ... caused Continental to refuse to perform its obligations pursuant to the terms" of the stock purchase agreement, by causing Continental to have "engaged in a pattern of actions and refusals of actions in-

---

1. The trial court made an explicit determination pursuant to Rule 74.01(b) that there was no reason to delay enforcement of the order granting defendant's motion.

**462**

cluding" [2]: Continental refused to agree on the appointment of a C.P.A. firm; Continental withheld its approval of an independent appraiser to appraise the assets of BIC; Continental refused to agree on a date for closing the purchase of plaintiffs' stock; and Continental refused to accept the appraisal prepared by the chosen appraiser.

Stripped to their essentials, these allegations, common to both Counts, simply plead that defendant, either as a director or a majority stockholder of Continental, caused Continental to act in specified ways which, in turn, caused Continental to breach its stock restriction agreement with plaintiffs. These allegations, however, do not specify how defendant "caused" Continental to act in the ways alleged.

## COUNT I—BREACH OF FIDUCIARY DUTY

Plaintiffs incorporate the foregoing allegations into Count I and allege the following additional facts. Because Continental is a majority shareholder of BIC, defendant is effectively a majority shareholder of BIC. As a "majority shareholder", "control person" and "officer of BIC," defendant owed plaintiffs, as minority shareholders of BIC, a fiduciary duty and a duty of fair dealing. "[S]ignificant assets of BIC were transferred to Continental without compensation or consideration," and "[t]hese assets ... along with the assets of Continental were wasted by [defendant] so that the contractual obligations of Continental to [plaintiffs] cannot be paid." "The conduct of [defendant] in causing the actions described above was not in the best interest of [plaintiffs] as minority shareholders of [BIC]."

Standing alone, these additional allegations simply allege that defendant, either as a director or shareholder of Continental, is effectively a "majority shareholder" or "control person" or "officer of BIC". And, in either one of these capacities, defendant

owed plaintiffs, as minority shareholders in BIC, a fiduciary duty of fair dealing. Defendant breached this duty by "wasting" assets of Continental and "wasting" assets of BIC transferred to Continental so that Continental could not meet its Contractual obligations to plaintiffs.

But, defendant's alleged fiduciary duty to plaintiffs as a shareholder of BIC is not necessarily congruent with Continental's alleged contractual duty to plaintiffs as parties to the stock restriction agreement. Thus, these additional allegations of plaintiffs in Count I intertwine alleged fiduciary duties and contractual duties which are not necessarily the same. And, these intertwined duties are not separated by the general and vague allegation that defendant's "conduct causing" Continental's actions was not in plaintiffs' best interest.

Our pleading principles may have abolished the technicalities of pleading. They do not abolish the need for clear thinking and clarity. *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 867 (Mo.App.1985), cert. denied 476 U.S. 1176, 106 S.Ct. 2903, 90 L.Ed.2d 989 (1986).

## COUNT II—INTENTIONAL INTERFERENCE WITH BUSINESS EXPECTATIONS

In Count II, plaintiffs incorporate *all* of their previous allegations and allege the following additional facts. Plaintiffs had an expectancy to receive money pursuant to the stock restriction agreement and defendant was aware of plaintiffs' expectancy. Defendant interfered with plaintiffs' business expectation by "causing" Continental to refuse to agree on a C.P.A. firm, to withhold approval of an appraiser, to refuse to agree on a purchase date for plaintiffs' stock and to refuse to accept the appraisal of BIC's assets. As a result of this conduct of defendant, plaintiffs received no money under the stock restriction agreement. Defendant acted "so that additional unearned remuneration and income

**2.** The petition does not actually allege defendant caused Continental to act. The petition alleges "[d]efendants ... have engaged in a pattern of actions and refusals of actions including but not limited to the following:", followed by a series of allegations of activity by Continental. We assume plaintiffs intended to allege defendant caused the actions.

would flow to Continental from BIC and ultimately to [her] personally."

In short, either as a "director" or "majority shareholder" of Continental, defendant caused Continental to act in the specified ways, which prevented plaintiffs from receiving the payment they expected to receive under the stock restriction agreement so that "unearned remuneration and income would flow" from BIC to Continental to defendant.

How defendant "caused" Continental to act the specified ways is not alleged, nor is the manner in which monies flowed ultimately to defendant alleged.

### DEFENDANT'S PLEADINGS

Defendant filed an answer, alleging a number of affirmative defenses. Defendant then moved for summary judgment, supporting her motion with her affidavit and excerpts from the deposition of one of the plaintiffs, Ronald Peterson. In response, plaintiffs cited some of the same portions of Mr. Peterson's deposition. The trial court granted defendant's motion for summary judgment. Plaintiffs' appeal followed.

### SUMMARY JUDGMENT

Summary judgment should be granted when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Rule 74.-04(c). We will affirm the summary judgment if, as a matter of law, it is sustainable on any theory. *Roberts Fertilizer, Inc. v. Steinmeier*, 748 S.W.2d 883, 886 (Mo.App. 1988).

### PLAINTIFFS' ARGUMENTS COUNT I—BREACH OF FIDUCIARY DUTY

On this Count, plaintiffs base their argument against summary judgment on a fiduciary duty they perceive to be owed to them by defendant. Plaintiffs note there is no dispute that defendant is a director of Continental, and, therefore, defendant owes a fiduciary duty to that corporation. *E.g. Ramacciotti v. Joe Simpkins, Inc.*, 427 S.W.2d 425, 431 (Mo.1968). Continen-

tal, plaintiffs argue, is a majority stockholder of BIC, and, as such, plaintiffs contend, Continental owes a fiduciary duty to minority stockholders of BIC, namely plaintiffs. Since defendant is a "director", "majority stockholder" or "control person" of Continental, plaintiffs reason, defendant owes plaintiffs a fiduciary duty which defendant breached. Plaintiffs argument is not persuasive.

In plaintiffs' prior action, *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896 (Mo. banc 1990), they obtained a jury verdict on a breach of contract claim against Continental on facts similar to the allegations in the present case. In *Peterson*, our Supreme Court "recognize[d] that majority shareholders owe a fiduciary duty to minority shareholders", *id.* at 904, and, thus, Continental, as a majority shareholder of BIC, owed a fiduciary duty to plaintiffs, as minority shareholders of BIC. The Court noted two duties Continental owed to plaintiffs: contractual and fiduciary.

> The stock restriction agreement does not destroy Continental's fiduciary duty to the [plaintiffs] as shareholders; nor does that agreement create additional fiduciary duties flowing from Continental to the [plaintiffs]. The obligations flowing to the [plaintiffs] under the agreement are not fiduciary in nature but contractual.

*Id.* at 905.

Then the Court pointedly observed that plaintiffs failed to distinguish the two duties from one another and failed to distinguish the separate legal relations creating those duties.

Plaintiffs' argument here suffers from the same failure. As noted, in their allegations common to both Counts, plaintiffs simply plead that defendant "caused" Continental to breach its agreement with plaintiffs. If this is a claim, it could only be interference with a contract or business expectancy. *Compare Lick Creek Sewer Sys, Inc. v. Bank of Bourbon*, 747 S.W.2d 317 (Mo.App.1988). This is what plaintiffs attempt to allege in Count II.

The only facts added by plaintiffs' allegations under Count I are: (1) significant

assets of BIC were transferred to Continental without compensation or consideration, (2) these unnamed assets along with other unnamed assets of Continental "were wasted by [defendant] so that the contractual obligation of Continental cannot be paid", and (3) defendant's "conduct ... in causing [Continental's] actions ... was not in the best interest of [plaintiffs] as minority shareholders."

Giving these allegations their broadest intendment, however, does not create a cognizable claim against defendant, other than the possible claim of interference with a contract or business expectancy. Plaintiffs do not allege that it was defendant who caused the alleged transfer of "significant assets of BIC to Continental without compensation or consideration." Therefore, defendant cannot be held liable for this transfer nor for any of the transfer's unnamed financial effects on BIC.

■ More important, perhaps, if defendant caused this transfer and it diminished the value of BIC, and, in turn, diminished the value of plaintiffs' minority shares, plaintiffs' action is a derivative shareholders' suit. *Dawson v. Dawson*, 645 S.W.2d 120, 125 (Mo.App.1982). Plaintiffs contend the injury they allege is to them as shareholders, not to them as parties to the stock restriction agreement. *Id.* Plaintiffs attempt to avoid the requirement of pleading a derivative suit, however, by arguing Continental and defendant benefited from the alleged transfer and, therefore, plaintiffs are the only persons injured. This argument is misdirected and, thus, misses the mark.

If assets of BIC were transferred to Continental without consideration, BIC is injured. Plaintiffs' argument is that they and Continental comprise all the shareholders of BIC and, since Continental benefited from the transfer, plaintiffs contend they are the only injured party and ought to be able to sue on their own behalf. This argument assumes shareholders are the only persons injured when a corporation is a victim of a transfer of assets without consideration.

Plaintiffs are not allowed to sue on their own behalf to recover their proportionate share of money alleged to have been wrongfully taken from the corporation. *Schick v. Riemer*, 263 S.W.2d 51, 55 (Mo. App.1953). This rule is to protect not only other shareholders, but also to protect creditors of the corporation. *Id.* at 54. Creditors of corporations can be injured by absconding corporate officers as easily as shareholders. Derivative suits protect creditor interests because any recovery goes to the corporation, not the shareholders. *Id.* Thus, even if all shareholders injured by corporate theft join in one suit, the suit must still be on the behalf of the corporation.

Plaintiffs likewise are not aided by alleging defendant "wasted" these unnamed assets in an unnamed manner along with causing the "wasting" of unnamed assets of Continental in an unnamed way. Plaintiffs plead the effect of this alleged conduct by defendant to be nothing more than causing Continental to be unable to pay plaintiffs under the stock restriction agreement. Again, if this pleads any claim, it simply pleads an interference with plaintiffs' contract or business expectancy. *Compare Carpenter v. Williams*, 41 Ga. App. 685, 154 S.E. 298, 300 (1930).

Furthermore, the additional vague allegation that defendant's conduct causing Continental's actions "was not in the best interest of [plaintiffs] as minority shareholders of [BIC]" adds no real substance. And, if it adds anything, it would create, at best, a stockholder derivative action not peculiar to nor pleaded by plaintiffs. *Dawson, supra.*

■ There is another fatal defect in plaintiffs' allegations. Plaintiffs' claim against defendant rests on the allegations that Continental, as a majority stockholder of BIC, owes plaintiffs, as minority shareholders of BIC, a fiduciary duty and defendant as a "director", "majority stockholder" or "control person" of Continental, thus, owes this fiduciary duty to the minority shareholders of BIC.

Although plaintiffs allege defendant is a shareholder and director of Continental, de-

fendant's affidavit shows she was only one of four directors and not a shareholder during the time in issue. Plaintiffs do not explain what they mean by the term "control person" in the context of their pleadings. Our reading of the petition leads us to conclude plaintiffs argue defendant was a control person of Continental by virtue of being a director and majority shareholder of Continental. Since defendant was not a shareholder during the time in question, her liability, if any, must depend solely on her status as director.

Plaintiffs have cited to no cases creating director liability as they urge us to find. Although one treatise reports cases supporting plaintiffs' arguments, there is apparently also contrary authority. Fletcher, *Cyc. Corp.* § 852, pp. 239–40 (1986). However, even if we were inclined to establish such liability as a general proposition, we would decline to apply the rule in this case.

The interests of Continental and plaintiffs under the stock restriction agreement are adverse to one another. Continental has an interest in paying the least proper amount under the contract and plaintiffs wish to be paid the highest proper amount. To require defendant to serve both these interests simultaneously would put her squarely on the horns of a dilemma and create a duty to obey two irreconcilable duties at one time. The law will not require defendant to perform an impossible act.

## COUNT II INTENTIONAL INTERFERENCE WITH A BUSINESS EXPECTANCY

■ Plaintiffs argue the trial court erred in granting defendant's motion for summary judgment on Count II because, they contend, there is a genuine issue of fact about whether defendant caused Continental to interfere with the legitimate business expectations of plaintiffs. Plaintiffs argue defendant failed to present any evidence to negate their pleading that defendant transferred assets from BIC to Continental or that defendant wasted Continental's assets so that it cannot meet its contractual obligation to them. We disagree.

Plaintiffs' argument that defendant failed to negate their pleading that defendant wasted Continental's assets and transferred BIC's assets to Continental is misdirected and thus, misses the mark. Plaintiffs do not allege this conduct of defendant as a basis for defendant's liability under this Count.

The allegations of the transferral of BIC's assets and waste of Continental's assets are in Count I. The allegations are incorporated into Count II. Count II also contains the following allegation:

> [Defendant] unlawfully and without justification interfered with the Plaintiffs' business expectation by unilaterally causing Continental to undertake the conduct described in paragraphs 20 and 26 and which had the result of the Plaintiffs receiving no sum of money by reason of the operation of [the stock restriction agreement].

The conduct alleged in paragraphs 20 and 26 is that Continental refused to agree on a C.P.A. firm, withheld approval of an appraiser, refused to agree on a purchase date for plaintiffs' stock and refused to accept the appraisal. As we read plaintiffs' petition, it is only the action of defendant in causing this conduct of Continental that plaintiffs allege as creating liability in defendant under Count II. However, even assuming plaintiffs had pleaded the transferral and waste of assets as grounds for recovery, we still believe defendant was entitled to summary judgment.

Defendant relies on two documents she submitted to the trial court in support of her motion for summary judgment, her affidavit and the deposition of one plaintiff, Ronald Peterson. In her affidavit, defendant states no resolution relating to the payment for plaintiffs' stock in Brooks was proposed or adopted in her presence from 1984 to 1988.

As noted above, plaintiffs do not allege how defendant "caused" Continental to undertake the described conduct. This vagueness creates substantial difficulty for defendant in trying to present evidence refuting the allegations in the petition.

Although defendant's affidavit is somewhat terse, in this case we find it sufficient to meet plaintiffs' allegations. The affidavit is in broad, unconditional terms. "[A]t

*no* time … in my presence was *any* resolution proposed or adopted by the Continental board of directors relating to the payment for the [plaintiffs'] stock in [BIC]." (Emphasis ours)

We are required to view the record in the light most favorable to the non-moving party. *Tatum v. General Motors Acceptance Corp.,* 732 S.W.2d 591, 592 (Mo.App.1987). But, given the vagueness of plaintiffs' allegations, we do not see how defendant could have been more specific than she was. We believe defendant's evidence was sufficient to shift the burden to plaintiffs to introduce some evidence showing the existence of a genuine issue of fact for trial. *Defino v. Civic Center Corp.* 780 S.W.2d 665, 669 (Mo.App.1989).

All plaintiffs offered into evidence was a portion of a deposition of one plaintiff, Ronald Peterson. The deposition fails to raise a genuine issue about whether defendant was present when any resolutions were offered relating to plaintiffs' stock. In fact, when asked what facts he had to show defendant caused Continental to refuse to accept the price of plaintiffs' stock, the deponent answered "[s]he was on the Board of Directors. She either knew or should have known, should have been in control or was in control, too, or should have been involved, or was involved in getting this done."

At best, this testimony merely establishes that defendant may have negligently allowed others to interfere with plaintiffs' business expectancy. However, an essential element of tortious interference with a business expectancy is an *intentional* interference by defendant which induces the breach of the expectancy. *National Advertising Co. v. Herold,* 735 S.W.2d 74, 79 (Mo.App.1987). Thus, Mr. Peterson's speculations and conjectures do not refute defendant's affidavit. *DeFino v. Civic Center Corp., supra,* at 669.

Judgment affirmed.

SMITH and GRIMM, JJ., concur.