W. Max C. DAWSON, Appellant,

v.

John P. DAWSON, John L. Allison, Donald Hughes, Hale Sanders, and Wayne Eighmy, Members of the Board of Directors of the Citizens Bank of Grant City, and Citizens Bank of Grant City, Respondents.

No. WD 32,833.

Missouri Court of Appeals,
Western District.

Nov. 23, 1982.

As Modified Jan. 4, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 4, 1983.

Application to Transfer Denied
Feb. 23, 1983.

Russell S. Jones, Jr. (argued), William E. Quirk, Shughart, Thomson & Kilroy, Kansas City, for appellant.

Don R. Lolli (argued), Theodore C. Beckett, Beckett & Steinkamp, Kansas City, Jerald L. Drake, Stephens & Drake, Grant City, for respondents.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

W. Max C. Dawson, a stockholder of defendant Citizens Bank of Grant City, appeals from the trial court's dismissal with prejudice of his second amended petition seeking an accounting by Citizens Bank particularly in regard to transfers made to Chairman of the Board John Dawson, recovery of past unauthorized transfers to John Dawson, and an injunction preventing further unauthorized transfers to John Dawson. Defendants' motion to dismiss or alternatively, to stay further proceedings, alleged plaintiff failed to state a cause of action, failed to state with particularity the factual basis for the action, and lacked standing. We reverse the trial court's dismissal and remand for further proceedings.

Max Dawson owns twenty-five of the 4,750 outstanding shares of Citizens Bank, acquired by bequest from his mother in June, 1978. She held the stock continuously from at least 1969. His first amended petition filed on July 16, 1980, named John Dawson and three other members of the board of directors as defendants, and sought an accounting and injunction. Defendants moved to dismiss or alternatively to make the petition more definite and certain. The trial court sustained the alternative motion.

The second amended petition, filed November 10, 1980, named as defendants the Citizens Bank and the entire board of directors.[1] In Count I, plaintiff sought an accounting of "all property, assets and business affairs of the bank", specifically as to all transfers to John Dawson from January 1, 1972, to the present, as well as an accounting by John Dawson of all payments received by him "in any way related to his employment by the bank". In Count II, he sought a complete restitution of all assets "dissipated, lost, alienated, misapplied or wasted" by payments to John Dawson, and a cancellation of a transfer on the bank's books in June, 1980 of 1,850 shares to John Dawson from Wheaton M.C. Dawson, Sr. (father of both John Dawson and Max Dawson). In Count III, he sought an order temporarily and permanently enjoining: (1) any transfers to John Dawson not directly related to the "lawful and legitimate day-to-day business" of the bank and to the "actual value of the services rendered" by him; (2) any future "misapplication, misap-

---

1. Hale Sanders and Wayne Eighmy, named in the second amended petition, joined the board after plaintiff filed his first amended petition.

propriation or waste" by the bank; and (3) any voting by John Dawson of the 1,850 shares transferred to him by his father.

In all three counts, Max Dawson alleged that John Dawson was the recipient of a series of unauthorized, illegal and ultra vires payments and transfers of bank assets including but not limited to:

(a) Payment by the Bank of substantial annual salaries, bonuses and directors' fees to defendant Dawson which were far in excess of the actual value of services rendered to the Bank by defendant Dawson;

(b) A purported transfer by the Bank during 1975 of at least 1000 shares of the Bank's stock to defendant Dawson for inadequate consideration and in violation of the preemptive rights of the remaining shareholders of the Bank;

(c) A purported transfer on the Bank's books in June, 1980, of in excess of 1850 shares of the Bank's stock to defendant Dawson from Wheaton M.C. Dawson, Sr., which shares were transferred for inadequate consideration and at a time when Wheaton M.C. Dawson, Sr., was incapable of selling such shares by reason of incompetency .... At the time of said purported transfer, the incompetency of Wheaton M.C. Dawson, Sr. was known to defendant Dawson, as evidenced by defendant Dawson's Petition For Appointment of Guardian of the Person and Estate. . . .

(d) Payment by the Bank of numerous personal expenses of defendant Dawson, including personal travel expenses, meals, lodging, gasoline for personal travel, and other personal transportation expenses, all of which were completely unrelated to the normal, day-to-day business affairs of the Bank, and all of which constituted remuneration far in excess of the actual value of the services rendered to the Bank by defendant Dawson;

(e) Purchase and maintenance by the Bank of various automobiles for the personal use of defendant Dawson, which use was and is completely unrelated to the normal day-to-day business affairs of the Bank. The use of said automobiles, together with the other payments and transfers made to defendant Dawson, constituted remuneration far in excess of the actual value of the services rendered to the Bank by defendant Dawson.

In addition, plaintiff asserted, among other things, that: (1) he brought the suit both on his own behalf and derivatively on behalf of Citizens Bank; (2) all the members of the board named as defendants are "under the control and domination" of John Dawson; (3) the board owns 98% of the bank's shares, with John Dawson holding 97% himself; (4) any demand made on the board or the shareholders to obtain the relief sought would be futile; (5) a demand was made, nevertheless, in a letter dated October 17, 1980, and defendants failed to afford the requested relief; (6) plaintiff was denied access to the bank's books and records; (7) defendants breached their fiduciary duty to the shareholders by refusing to provide an accounting; (8) the alleged transfers constituted misapplication, misappropriation and waste; and (9) plaintiff has no adequate remedy at law.

On December 5, 1980, defendants filed a motion to dismiss with prejudice or alternatively to stay further proceedings, citing three grounds for dismissal: (1) failure to state a cause of action; (2) failure to state with particularity the factual basis of the cause of action; and (3) lack of legal capacity or standing to sue.

The trial court heard the motion on March 5, 1981. On April 27, 1981, with "good cause having been found", it dismissed with prejudice plaintiff's petition. Because the grounds on which the dismissal was granted were not specified, plaintiff challenges on appeal each of the grounds raised by defendants.

We must assume that the trial court dismissed the petition on the grounds specified in defendants' motion. *Johnson v. Great Heritage Life Ins. Co.,* 490 S.W.2d 686, 690 (Mo.App.1973); *Saigh ex rel. Anheuser-*

*Busch, Inc. v. Busch,* 396 S.W.2d 9, 18 (Mo. App.1965), *cert. denied,* 384 U.S. 942, 86 S.Ct. 1465, 16 L.Ed.2d 541 (1966). If any of the grounds raised by defendants support their motion, the dismissal must be affirmed. *Pizzurro v. Estate of Hichew,* 568 S.W.2d 263, 264 (Mo.1978) (en banc).

### 1. *Standing*

Plaintiff claims standing to bring this action both individually and derivatively. His claim of individual standing is based on his characterization of the directors as fiduciaries owing a duty to each shareholder.

■ Although the fiduciary relationship of a director or officer of a corporation to the shareholders is well-recognized, *Ramacciotti v. Simpkins, Inc.,* 427 S.W.2d 425, 431 (Mo.1968); *State ex rel. Moore v. State Bank of Hallsville,* 561 S.W.2d 722, 724–25 (Mo.App.1978), that relationship is generally held to be between the directors and the shareholders *as a whole.* Corporate shareholders cannot in their own right and for their own personal use and benefit maintain an action for the recovery of corporate funds or property improperly diverted or appropriated by the corporation's officers and directors. The injury is to the corporation—to the shareholders collectively—and not to the shareholders individually. The right to maintain the suit is a right of the corporation, and therefore, suit must be brought derivatively.[2] *Punch v. Hipolite Co.,* 340 Mo. 53, 67, 100 S.W.2d 878, 884 (1936); *Saigh ex rel. Anheuser-Busch, Inc. v. Busch, supra,* at 16; *Schick v. Riemer,* 263 S.W.2d 51, 54 (Mo.App.1953).

Plaintiff's allegations of improper payments and transfers of corporate assets to John Dawson, therefore, cannot be brought individually.

■ Where a complaint relates to the direct injury of the plaintiff, however, a derivative action may not be necessary. In *Gieselmann v. Stegeman,* 443 S.W.2d 127 (Mo.1969), plaintiff was deprived of 14,000 shares of stock when defendant cancelled plaintiff's ownership of the shares and reissued them to himself. The court held that the outstanding stock, already issued to plaintiff, was not corporate property and therefore, plaintiff was not required to sue on behalf of the corporation. The injury was his and not the corporation's.

■ Only two allegations in plaintiff's petition could conceivably relate to rights held individually by him and not by the corporation: (1) that stock was transferred on the bank's books from Wheaton Dawson to John Dawson in June, 1980 when Wheaton Dawson was incompetent to make the transfer[3]; and (2) that plaintiff was deprived of his right to inspect the corporate books and records.

■■ The allegation of a transfer from plaintiff's father, Wheaton Dawson, to John Dawson is of no assistance to plaintiff on this point. Although a director cannot deal with the property of the corporation for his own personal advantage, that duty does not extend to outstanding stock which is the individual property of shareholders. A director may purchase such stock just as may any other shareholder. *Yax v. DIT–MCO, Inc.,* 366 S.W.2d 363 (Mo.1963). Here, we have a transfer from one shareholder to another alleged to have been made with inadequate consideration. Whether or not that is true, plaintiff has alleged no facts to show that he has been individually harmed as a result. The transfer is therefore one which, under the facts alleged, plaintiff has no standing to challenge individually.

■ By contrast, plaintiff's allegation that he was deprived of his right to inspect

---

**2.** In *Schick v. Riemer,* 263 S.W.2d 51, 54 (Mo.App.1953), the court cites two reasons for denying individual shareholders the right to maintain a suit against the corporation. First, a judgment in favor of one stockholder would not bar the maintenance of an action by a creditor or by the corporation. Only by repayment to the corporation itself can the rights of creditors and the corporation be fully protected.

Second, if every minority shareholder could sue in his own name for his proportionate share of the money due the corporation, the filing of a multiplicity of suits could pose an intolerable situation.

**3.** Defendant John Dawson asserts this transfer was made at arms length in September, 1971.

the corporate books can support an individual action. The court in *Gieselmann v. Stegeman, supra,* specifically acknowledged at 131 that actions for "refus[al] to allow [a shareholder] to inspect the corporate books and records ... may be brought by shareholders as individuals ... and are not required to be brought as derivative actions." The right to inspect is provided for in § 351.215 [4] which requires corporations to give shareholders access to certain documents.[5] The record here is unclear as to whether plaintiff was allowed to inspect the statutory records. A letter from the bank's attorney dated October 22, 1980, authorized inspection, denying access only to certain requested documents said not to be within the scope of § 351.215. Because we do not know what was requested, we cannot determine if the records plaintiff seeks are those to which he is entitled. We hold, therefore, that any right to maintain this suit individually extends only to the degree his statutory right to inspect was denied, if at all.[6]

Plaintiff also asserts that he brings this action derivatively under Rule 52.09, which provides as follows:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation ... the corporation ... having failed to enforce a right which may properly be asserted by it, *the petition shall ... allege that the plaintiff was a shareholder* or member *at the time of the transaction* of which he complains or that his share or membership thereafter devolved on him by operation of law. *The petition shall also allege with particularity the efforts,* if any, made by the plaintiff *to obtain the action he desires from the directors* or comparable authority and, if necessary, from the shareholders or members, *and*

*the reasons for his failure to obtain the action* or for not making the effort. *The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders* or members similarly situated in enforcing the right of the corporation or association (emphasis added).

Defendants contend that plaintiff has failed to meet the requirements of Rule 52.09 because: (1) he was neither a shareholder during the period complained of nor a holder of shares which devolved on him by operation of law; (2) he has neither made adequate demand on the directors and shareholders for the desired relief nor alleged with particularity his reasons for not doing so; and (3) he has not shown that he fairly and adequately represents the shareholders.

On defendants' first point, plaintiff concedes that he did not acquire his twenty-five shares by will until June, 1978. Therefore, he can maintain suit for the period 1972–1978 only if his shares "devolved on him by operation of law". Defendants argue that receiving property pursuant to a will does not satisfy this requirement.

"Operation of law" is defined in Black's Law Dictionary 985 (rev. 5th ed. 1979) as "the manner in which rights ... devolve upon a person by the mere application ... of the established rules of law, without the act or co-operation of the party himself."

■ The purpose of the requirement that a plaintiff must have been a shareholder at the time complained of "is to prevent an outsider from buying shares ... for the purpose of seeking to upset an action that had been taken by the corporation at some

---

4. All sectional references are to Revised Statutes of Missouri, 1978, unless otherwise indicated.

5. The accessible documents are limited to minutes of shareholder and board proceedings, books recording the number of shares subscribed, names of shareholders and the number owned by each, the amount of shares paid and by whom, transfers of shares, amount of assets

and liabilities, and names and residences of officers.

6. Note the distinction between an action to inspect the records specified in § 351.215, which can be maintained individually, and an equitable action for accounting which, when brought in connection with a corporation's right to recover corporate funds, is a derivative action.

previous time. It [seeks] to preclude an undesirable practice on the part of some speculators." *Vann v. Indus. Processes Co.,* 247 F.Supp. 14, 18–19 (D.D.C.1965).

 Here plaintiff's shares came to him by will, requiring no act or cooperation on his part. He could, of course, have renounced his inheritance, but for purposes of Rule 52.09, "cooperation" must require more than simply refraining from renunciation. That a bequest by will requires the "application of established rules of law" is made abundantly clear by reference to § 474.320 which prescribes a formal procedure for the creation and execution of wills, and to the remainder of the Probate Code which extends the effect of the law and makes each devise subject to claims of other persons, including surviving spouses, the state and federal governments, and other kinds of creditors. In light of the extensive involvement of the law in the passage of property from a deceased person, a devise must be regarded as a transfer by operation of law. By contrast, this involvement is ordinarily not the case with inter-vivos gifts. We recognize that for many purposes, "operation of law" does not include receiving property by will, but for purposes of Rule 52.09, we see no reason why it should not. Interpreting the term to include bequests in no way interferes with

the rule's purpose of protecting the corporation from speculators. We see no reason why a derivative suit by a plaintiff who receives the shares by intestacy should be favored in the law over a plaintiff who receives the shares by will. Because both require the death of the previous owner, we see little likelihood of collusion or the intentional transfer of stock to another party for the sole purpose of enabling him to bring suit. Because plaintiff here can hardly be considered a speculator against whom the rule seeks to protect corporations, we hold that having pleaded that he succeeded to ownership of shares of stock by will, an event over which he had no control, plaintiff's petition satisfies the "operation of law" exception to the requirement that a plaintiff must have owned shares at the time of which he complains.[7]

Defendants' second point is that plaintiff failed to make adequate demand on the directors and shareholders before bringing his suit or to show his reasons for not doing so.

 The parties discuss extensively whether plaintiff is excused from this requirement because, having named the entire board as defendants, asking the board members to sue themselves would be futile.[8] While shareholders will not be required to

---

**7.** *See Buddon Realty Co. v. Wallace,* 238 Mo. App. 900, 189 S.W.2d 1002, 1008 (1945) (suggesting that transfer by death could be included within the phrase "operation of law" as used in a lease if it were the same type of transfer as others enumerated in the lease). *See also Salter v. Columbia Concerts, Inc.,* 191 Misc. 479, 77 N.Y.S.2d 703 (N.Y.Sup.Ct.1948) (observing that courts have held that devolution by will takes place by operation of law and that "no real distinction is found between intestate and testate succession. In each case the critical event from which the succession springs is death, an event over which the decedent has no control. What follows in the disposition of the property left by him is as much the operation of law in one case as in the other.")

**8.** Where the alleged wrongdoers control a majority of the shares, but do not constitute a majority of the board, the demand is not deemed futile. *Goodwin v. Goodwin,* 583 S.W.2d 559 (Mo.App.1979). A mere allegation that a demand on the directors who were wrongdoers would be futile "is the same as no

allegation at all." *Bailey v. State Farmers Mut. Casualty Co.,* 377 S.W.2d 485, 488 (Mo.App. 1964). Here, plaintiff alleges wrongdoing only by defendant John Dawson. The other board members are said only to be "under the control and domination" of Dawson. We find no cases addressing this question, but in the absence of allegations of actual wrongdoing by a majority of the board, we do not endorse the practice of attempting to circumvent the Rule 52.09 requirement by naming all members of the board as defendants and alleging simply that a demand that they sue themselves would be futile.

Plaintiff is excused, however, from making demand on the shareholders where the petition alleges that a majority of shareholders participated in the acts of which the petition complains. *See Saigh ex rel. Anheuser-Busch, Inc. v. Busch, supra.* Defendant John Dawson is alleged here to own 97% of the shares. Asking him, the only alleged wrongdoer, to take action against himself would, indeed, be futile.

make a futile gesture, *O'Maley v. ISC Indus., Inc.*, 519 S.W.2d 346, 349 (Mo.App. 1975), the question is largely mooted here by the fact that plaintiff did, indeed, make demand on the board in a letter dated October 17, 1980, for a full and complete accounting and for "appropriate action . . . against John P. Dawson, including . . . litigation, if required to recover past unauthorized payments and transfers of assets . . . ." The response to this demand, by letter from the board dated October 22, 1980, was that an accounting would be considered at its next meeting. As to the request for litigation, the board stated that if plaintiff "will identify with particularity his complaints, the Board of Directors will discuss the allegations at its next regularly scheduled meeting and take whatever action is deemed appropriate". Without doing so, plaintiff filed his second amended petition on November 10, 1980, alleging that defendants had failed to afford "any of the relief requested."

On November 21, 1980, the board again wrote to plaintiff, advising him that a special committee had been appointed at the November 15 meeting to review payments to John Dawson and submit findings on January 12, 1981.

Inarguably, to that point, a demand for action had been made, and the board had not yet shown that it would not comply. At the hearing held March 5, 1981, defendants' attorney informed the court that the accounting was approximately half complete. Defendants were not adhering to their self-imposed January deadline, but neither were they refusing to cooperate.

On these facts, we find that plaintiff acted hastily in filing his second amended petition without giving the board time to comply with his demand, but that if this was the reason the trial court dismissed the petition, that dismissal was inappropriate. In light of the stage of the proceedings by the March 5, 1981, hearing, a stay of further proceedings until the accounting was complete, as defendants requested in their alternative motion, would have been far more in keeping with the demands of justice.

We hold, therefore, that on remand, defendants' motion for a stay should be granted for a reasonable time, until both the accounting is complete and the board has indicated whether it will seek the relief requested by plaintiff.

In defendants' third point, they argue that plaintiff has not shown that he "fairly and adequately represents the interests of the shareholders" as required by Rule 52.09, because his interest (one-half of one percent) is *de minimis* and because he has not shown what other shareholders he represents.

This argument is without merit.

Rule 52.09 requires only that plaintiff be a "shareholder" and has never been interpreted to require ownership of a minimum number of shares. Ownership of twenty-five shares is more than adequate to satisfy the requirements of the rule.

Further, we find no basis for defendants' contention that plaintiff must show what other shareholders he represents.[9] The rule interpreting whether a plaintiff "fairly and adequately" represents shareholders similarly situated was stated in *Sweet v. Bermingham*, 65 F.R.D. 551, 554 (S.D.N.Y.1975):

> [W]hen a derivative plaintiff demonstrates to the court an intent and desire to vigorously prosecute . . . and when he has engaged competent counsel . . . then, absent either a conflict of interest which goes to the forcefulness of the prosecution or the existence of antagonism between the plaintiff and other shareholders arising from differences of opinion concerning the best method of vindicating the corporate claim, the representation requirement of Rule 23.1 [the federal rule comparable to Rule 52.09] is met.

---

9. That other shareholders exist is evinced in plaintiff's petition by the allegation that the board controls 98% of the shares of stock and plaintiff owns one-half of one percent. At least one percent remains unaccounted for, presumably in the hands of some other shareholder or shareholders.

■ That plaintiff intends vigorous prosecution of this matter and has engaged competent counsel is clear from the progress of this case to date. As to the existence of a conflict of interest or antagonism between plaintiff and other similarly situated shareholders, defendants bear the burden of proof. *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 592–93 n. 15 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); *Schupack v. Covelli,* 512 F.Supp. 1310, 1312 (W.D.Pa.1981). They can meet that burden by producing affidavits from all the shareholders not a party to this suit showing that plaintiff does not represent their interests, and in fact, represents only himself in that no other shareholders are "similarly situated". *Kuzmickey v. Dunmore Corp.,* 420 F.Supp. 226, 230–31 (E.D.Pa.1976). Defendants here have not done so.

We hold, therefore, that subject to the granting of defendants' motion to stay further proceedings, plaintiff's petition satisfies the pleading requirements of Rule 52.09 and accordingly, he has standing to bring this derivative action.

### 2. *Sufficiency of the pleaded facts*

Defendants characterize plaintiff's allegations as "broad and general statements" which are ultimate conclusions and not ultimate facts, and which, therefore, fail to provide the detail required in Rule 55.05.

Rule 55.05 provides that a pleading "shall contain . . . a short and plain statement of the facts showing that the pleader is entitled to relief".

■ This rule has been interpreted to require the pleader to state "ultimate facts", and not the facts and circumstances by which the ultimate facts will be established. *Scheibel v. Hillis,* 531 S.W.2d 285, 290 (Mo.1976) (en banc). Evidence in support of allegations need not be pleaded. *Banks v. Morris & Co.,* 302 Mo. 254, 257 S.W. 482, 485 (1924) (en banc). If the petition invokes substantive principles of law which if proved may entitle plaintiff to relief, dismissal is improper. *Laclede Gas Co. v. Hampton Speedway Co.,* 520 S.W.2d 625 (Mo.App.1975).

■ Here, plaintiff has alleged that certain unauthorized, illegal and ultra vires acts have occurred, including payment of excessive salaries and bonuses, specific stock transfers, payment of defendant John Dawson's personal expenses, and corporate purchases of automobiles for John Dawson's personal use. We find that considering the nature of the cause of action—an accounting to discover with particularity all transactions between the bank and defendant John Dawson—these allegations sufficiently invoke substantive principles which, if proved, may entitle plaintiff to relief and therefore, adequately meet the requirements of Rule 55.05.

### 3. *Failure to state a cause of action*

In their motion to dismiss, defendants contend that the petition fails to state a cause of action.

■ The elements which must be pleaded in an action for an accounting are: (1) the need for discovery; (2) the complicated nature of the accounts; (3) the existence of a fiduciary or trust relationship; and (4) the inadequacy of a legal remedy. *Dahlberg v. Fisse,* 328 Mo. 213, 40 S.W.2d 606, 609 (1931); *Kalberloh v. Stewart,* 378 S.W.2d 820 (Mo.App.1964).

Plaintiff has pleaded each of those elements.

■ In their brief, defendants argue only that plaintiff has failed to state a cause of action because an adequate legal remedy exists in § 351.215. That section provides for an examination by shareholders of certain books and records as listed in footnote five, *supra,* and specifies that if an officer refuses to exhibit the records on demand he shall forfeit $250. That, say defendants, is an adequate legal remedy.

We must disagree for two reasons. First, § 351.215 does not include all the records sought by plaintiff in this accounting. Specifically, it does not authorize access to records of payments and transfers made to specific directors. To inspect such records, an equitable accounting is the only remedy.

**130**

Second, § 351.215 has long been enforceable in Missouri by a writ of mandamus, *see State ex rel. Moore v. State Bank of Hallsville, supra,* in apparent recognition of the fact that an award of $250 is hardly an adequate remedy to a shareholder who may be concerned about thousands of dollars in purportedly unauthorized or illegal transactions.

Finally, in their motion to dismiss, defendants raised two additional points. First, defendants argued that plaintiff cannot complain of a transfer of stock in 1975 alleged to be in violation of the remaining shareholders' preemptive rights because plaintiff's mother, who owned the shares at that time and from whom plaintiff received the shares by will, waived in writing any right to participate in the purchase.

■ We find only that the complaint cannot be dismissed based on this allegation. Defendants must present proof of this waiver at trial, and plaintiff must be allowed to present any evidence he has which may invalidate the agreement.

■ Second, defendants argue that plaintiff cannot complain, as he does in paragraph 10(c) of his petition, of the transfer of stock on the bank's books in June, 1980 from Wheaton Dawson to John Dawson because the claim does not involve the bank, but complains of a private transfer between shareholders. We agree. As we discussed under "Standing", *supra,* a director may freely purchase stock from other shareholders without violating any corporate duty. Inadequacy of consideration—or even the fact that the stock was a gift— does not affect the recipient's right to have the stock transferred on the corporate books. *Senn v. Union Premium and Mercantile Tile Co.,* 115 Mo.App. 685, 92 S.W. 507, 511 (1906). The allegation, therefore, sets out no cause of action.

For the foregoing reasons, we hold that plaintiff has individual standing only to the extent that his statutory right to inspect the corporate books was denied, if at all; that the trial court should have granted defendants' alternative motion for a stay of further proceedings pending completion of the bank's accounting; that if the board refuses plaintiff's demand following completion of the accounting, plaintiff has derivative standing to maintain this suit; that plaintiff's petition satisfies the pleading requirements of Rule 55.05; and that with the exception of plaintiff's complaint of a private stock transfer between shareholders, his petition states a cause of action.

Accordingly, we reverse the trial court's granting of defendants' motion to dismiss and remand for further proceedings consistent with this opinion.

All concur.