**In re BRIDGE INFORMATION SYSTEMS, INC., et. al., Reorganized Debtors,**

**Scott A. Peltz, Plan Administrator, Movant.**

No. 01–41593–293.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

May 23, 2005.

Benjamin S. Kaminetzky, Thomas A. Tormey, David, Polk & Wardwell, New York, NY.

David B. Goroff, Bruce W. Doughty, Geoffrey S. Goodman, Derek L. Wright, Foley & Lardner, Chicago, IL.

Steven N. Cousins, David L. Going, Susan K. Olsen, Armstrong Teasdale, LLP, St. Louis, MO.

Paul B. Lackey, Lack Hershman, Dallas, TX.

John J. Hall, Lewis, Rice et al., St. Louis, MO.

## MEMORANDUM OPINION

DAVID P. MCDONALD, Bankruptcy Judge.

This case is before the Court on the motion of the Plan Administrator for Bridge's estate (the "Plan Administrator") to compromise his claims with Welsh Carson under Bankr. R. 9019. There is no dispute that the proposed compromise is in the best interest of Bridge's estate. The only question is whether the proposed settlement binds non-parties to the proposed agreement, Highland Capital Management and its related entities (collectively "Highland"), who have asserted state law claims against Welsh Carson. The Court finds that because Bridge was the entity that was directly injured by Welsh Carson's alleged wrongdoing contained in the state law claims, those claims belong to Bridge's estate. Accordingly, the Court will grant Plan Administrator's Rule 9019 motion to compromise his claims with Welsh Carson.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

## FACTUAL AND PROCEDURAL BACKGROUND

After reviewing the record in the light most favor to Highland and accepting all of Highland's factual allegations as true, the Court finds that following facts.[1] Highland was a member of a lender group that provided pre-petition credit to Bridge. Highland possesses a $65,000,000.00 unsecured claim against Bridge's estate.

The Welsh Carson Partners are a related group of limited partnerships (collectively "Welsh Carson"). Welsh Carson purchased a controlling interest in Bridge in 1995 and then caused Bridge to acquire Savvis in April, 1999. Welsh Carson caused Bridge to transfer 56% of Bridge's interest in Savvis to the individual Welsh Carson partnerships in two separate transactions that occurred in September, 1999 and February, 2000.

Bridge defaulted on the loan covenant with the lender group in September, 2000. At that point, a number of the general partners of the individual Welsh Carson partnerships (collectively the "General Partners"), who were also the officers and directors of Bridge, attempted to renegotiate Bridge's debt with the lender group in an effort to stave off the necessity of seeking relief under Chapter 11. The General Partners represented to Highland that they had identified a purchaser for Bridge's assets. The General Partners additionally stated to Highland that the potential buyer demanded that the members of the lender group accept a payment of 17 cents on each dollar of debt. The General Partners further told Highland that if it refused to consent to this proposal, they would cause Bridge to file a petition for relief under Chapter 11 and Highland would receive nothing.

Highland initially consented to the General Partners' offer to sell Bridge's assets and accept a payout of 17 cents per dollar of debt. The General Partners, however, were not able to secure a purchaser for

---

1. Because Plan Administrator requests that the Court dismiss the Consolidated Adversary with respect to Highland because Highland lacks standing to assert those claims, the Court has accepted all of Highland's factual allegations in the Consolidated Adversary as true and will review the record in the light most favorable to Highland. *Gardner v. First Am. Title Ins. Co.,* 294 F.3d 991, 993 (8th Cir.2002).

Bridge's assets. Highland then commenced an involuntary proceeding in this Court against Bridge on February 1, 2001. Bridge responded by filing a voluntary petition for relief on February 15, 2001. The Court then dismissed Highland's involuntary petition as moot on March 28, 2001.

Welsh Carson caused Bridge to transfer $20,000,000.00 in cash to Savvis in two different separate transactions in January, 2001 (collectively the "Pre–Petition Transfers") even though Savvis owed Bridge $30,000,000.00 at the time of the two transfers. The Pre–Petition Transfers occurred during the interim between the date the General Partners represented to Highland that they had found a buyer for Bridge's assets and Highland filing the involuntary petition against Bridge. Additionally, Welsh Carson caused Bridge to make the Pre–Petition Transfers to Savvis at a time when Welsh Carson and the General Partners controlled both companies.

Highland commenced an action against Welsh Carson, the General Partners and Savvis in Texas State Court on August 28, 2002 (the "State Court Action"). The basis of Highland's State Court Action was that Welsh Carson and the General Partners misrepresented to Highland that they had a buyer for Bridge. Highland contended that Welsh Carson knew that there was no potential buyer for Bridge when it made the representation and that if Highland had known that fact, it would have filed an involuntary petition before Welsh Carson could have caused Bridge to make the Pre–Petition Transfers.

Highland asserted eight counts in the State Court Action. Counts I and II were fraudulent misrepresentation and negligent misrepresentation claims. Count III was a tortious interference claim. Counts IV an V were conspiracy to commit tortious interference and fraud claims.

Counts VI and VII were aiding and abetting fraud and tortious interference counts. For simplicity, the Court will refer to Counts I through VII as the "Tort Claims". Count VIII contained a veil piercing claim, asserting that Bridge was simply the *alto ego* of Welsh Carson and the General Partners. The Court will refer to Count VIII as the "Veil Piercing Claim".

Savvis, with the consent of Welsh Carson and the General Partners, removed the State Court Action to the United States District Court for the Northern District of Texas (the "Texas District Court"). Savvis further requested that the Texas District Court transfer venue to this Court because the claims in the State Court Action belonged to Bridge's estate. Highland responded to the motion to transfer venue by filing a motion to remand the State Court Action back to Texas State Court. The Texas District Court granted Savvis' motion to transfer venue to this Court and denied Highland's motion on June 25, 2003.

While the parties' respective motions were pending in the Texas District Court, Welsh Carson and the General Partners filed a declaratory judgment action in this Court on May 8, 2003 (the "Declaratory Judgment Action"). The Declaratory Judgment Action sought a declaration that because the injury Highland complained of in the State Court Action was simply derivative of Bridge's direct injury, the causes of action contained in the State Court Action belonged only to Plan Administrator. Welsh Carson and the General Partners also requested that this Court enjoin Highland from prosecuting the State Court Action.

After the Texas District Court transferred the State Court Action here, Highland filed a motion to dismiss, abstain or transfer the State Court Action back to

the Texas District Court. The Court denied Highland's motion on September 24, 2003.

The parties then agreed to consolidate the State Court Action and the Declaratory Judgment Action into one single adversary proceeding (the "Consolidated Adversary"). The Court also realigned the parties in the Consolidated Adversary. Specifically, Highland and Plan Administrator were designated as the plaintiffs and Welsh Carson and the General Partners were designated as the defendants. Additionally, Highland's complaint in the State Court Action became the complaint in the Consolidated Adversary.

There are several matters pending between Plan Administrator and Welsh Carson, including the claims in the Consolidated Adversary and Plan Administrator's $40,000,000.00 preference action against Welsh Carson. Plan Administrator has filed a motion pursuant to Bankr.R. 9019 to compromise all the claims between him and Welsh Carson, including the causes of action contained in the Consolidated Adversary.

No party has objected to the substance of Plan Administrator's proposed settlement with Welsh Carson. Highland, however, has objected to Plan Administrator's motion to compromise to the extent that it attempts to compromise Highland's causes of action contained in the Consolidated Adversary. For the reasons discussed below, the Court will grant Plan Administrator's motion to compromise all of the claims against Welsh Carson, including the claims Highland attempts to assert in the Consolidated Adversary.

## DISCUSSION

### A. Introduction

■ A court should approve a debtor-in-possession's motion to compromise a dispute under Bankr.R. 9019 if the compromise is in the best interest of the estate.

*In re Trism, Inc.,* 282 B.R. 662, 668 (8th Cir. BAP 2002).

Here, there is no dispute that Plan Administrator's proposed compromise with Welsh Carson is in the best interest of Bridge's estate. The unsecured creditors' committee filed a response to Plan Administrator's Rule 9019 motion in support of the proposed compromise. Also, Plan Administrator submitted his own affidavit in support of his motion, which outlines his experience in litigating large preference claims and his opinion that the proposed settlement was in the best interest of Bridge's estate. Given this record, the Court finds that Plan Administrator has established that the proposed settlement is in the best interest of Bridge's estate.

Highland is the only entity that has objected to Plan Administrator's proposed settlement with Welsh Carson. Highland does not contend that proposed settlement is not in the best interest of Bridge's estate. Rather, Highland only disputes whether the proposed settlement can dispose of the Tort Claims and the Veil Piercing Claim because Highland argues that those claims belong to it rather than Bridge's estate. Because Bridge, not Highland, was the entity that was directly injured by Welsh Carson's alleged malfeasance with respect to both the Tort Claims and the Veil Piercing Claim, all of the claims in the Consolidated Adversary belong to Bridge's estate.

### B. Procedural Issues.

■ Highland posits both procedural and substantive arguments as to why the Court should not grant Plan Administrator's Rule 9019 motion. Highland advances two procedural arguments. First, Highland contends that the court should adjudicate Plan Administrator's request to include the claims contained in the Consolidated Adversary by way of summary judgment. Highland additionally argues

that because some of the Highland entities have not filed proofs of claim against Bridge's estate, this Court does not have the authority to determine those entities' rights with respect to the claims in the Consolidated Adversary. The Court rejects both these arguments.

■ Bankruptcy courts have plenary power to determine the extent of the debtor's estate. 28 U.S.C. §§ 157(b) & 1334(a); *In re Continental Airlines,* 138 B.R. 442, 445 (D.Del.1992). Thus, bankruptcy courts have the authority to determine what causes of action belong to the debtor's estate and prevent all other entities, including entities that have not filed proof of claims, from prosecuting those causes of action when ruling on a debtor-in-possession's motion to compromise claims under Rule 9019. *Sobchack v. Am. Nat'l. Bank & Trust Co. (In re Ionosphere Clubs, Inc.),* 17 F.3d 600, 607 (2d Cir.1994).

Her, the entire basis for Plan Administrator's claim that the proposed compromise with Welsh Carson should include the claims in the Consolidated Adversary is that those claims are property of Bridge's estate under 11 U.S.C. § 541(a). Accordingly, this Court has the statutory power to adjudicate Plan Administrator's proposed settlement with Welsh Carson and prohibit all of the Highland entities from prosecuting those claims under Bankr.R. 9019.[2] *Id.*

## C. Substantive Issues.

*1. Missouri law applies in determining whether the Tort Claims and Veil Piercing Claim are property of Bridge's estate under 11 U.S.C. § 541(a).*

■ The substantive issue in dispute here is whether the Tort Claims and the Veil Piercing Claim belong to Bridge's estate under 11 U.S.C. § 541(a). Applicable state law determines what causes of action belong to the debtor's estate under 11 U.S.C. § 541(a). *Mixon v. Anderson (In re Ozark Restaurant Equip. Co.),* 816 F.2d 1222, 1225 (8th Cir.1987). Because the Court will examine applicable state law in analyzing the substantive issue in dispute, the Court will apply Missouri's conflict of law principles to determine which state's law should apply in analyzing the substantive issue. *In re Payless Cashways,* 203 F.3d 1081, 1084 (8th Cir.2000) (holding that when applying state substantive law, a federal court should utilize the forum state's conflict of law principles).

Missouri has adopted the most significant relationship test embodied in Restatement (Second) of Conflicts of Law § 145 in analyzing conflict of law issues involving tort claims. *Kennedy v. Dixon,* 439 S.W.2d 173, 184 (Mo. banc 1969); *Goede v. Aerojet Gen. Corp.,* 143 S.W.3d 14, 24–25 (Mo.Ct.App.2004). Highland and Plan Administrator agree that Missouri has the most significant relationship to the Tort Claims. Accordingly, the Court will apply Missouri law in determining whether the Tort Claims are property of Bridge's estate under 11 U.S.C. § 541(a).

■ With respect to the Veil Piercing Claim, Missouri courts generally apply the internal affairs doctrine with respect to disputes involving the administration or governance of a corporation. *Yates v. Bridge Trading Co.,* 844 S.W.2d 56, 61 (Mo.Ct.App.1992). A request to pierce a corporation's veil necessarily involves an analysis of how the controlling sharehold-

**2.** As noted above, however, because Plan Administrator's motion asserts that Highland lacks standing to assert both the Tort Claims and the Veil Piercing Claim, the Court has accepted all of Highland's factual allegations as true and reviewed the record in the light most favorable to Highland.

ers administered and governed the corporation. *See Dassault Falcon Jet Corp. v. Oberflex, Inc.,* 909 F.Supp. 345, 349 (M.D.N.C.1995). Accordingly, under the internal affairs doctrine, the applicable law in an adjudicating a veil piercing claim is the state law under which the corporation exists. *DeWitt v. Hutchins* 309 F.Supp.2d 743, 751 (M.D.N.C.2004); *Realmark Investment Co. v. Am. Fin. Corp.,* 171 B.R. 692, 694 (N.D.Ga.1994). Therefore, because Bridge is a Missouri corporation, Missouri law will apply to the Veil Piercing Claim.

### 2. The Tort Claims belong to Bridge's Estate.

 Only a trustee has standing to assert pre-petition claims that are property of the debtor's estate under 11 U.S.C. § 541(a)(1). *Mixon v. Anderson (In re Ozark Restaurant Equip. Co.),* 816 F.2d 1222, 1225 (8th Cir.1987). As discussed above, applicable state law determines whether the cause of action belongs to the debtor's estate. *Id.* And as noted in the preceding discussion, the applicable state law the Court should apply with respect to the Tort Claims is Missouri. Accordingly, if only Bridge could have asserted the Tort Claims against Welsh Carson on date of petition under Missouri law, those claims are property of Bridge's estate that only Plan Administrator has standing to assert.

Highland relies heavily on the Fifth Circuit's opinion in *In re Educators Group Health Trust,* 25 F.3d 1281 (5th Cir.1994) in arguing that because Welsh Carson made the misrepresentation at issue to it directly, it has standing to assert the Tort Claims. The opinion in *Educators Trust,* however, supports Plan Administrator's position that the Tort Claims belong to Bridge's estate so that only he has standing to assert them.

The bankruptcy court and the district court in *Educators Trust* applied the exact test that Highland urges this Court should apply here. Specifically, the lower courts held that the proper inquiry was to examine whether the alleged misconduct was directed at the debtor corporation or the creditor in determining which party had standing to assert the claims arising from the misconduct. *Id.* The Fifth Circuit rejected that test and held that the proper inquiry under Texas law focuses on the relationship between the injury and the debtor corporation. *Id.* at 1284–85. If the debtor corporation suffered the direct injury from the alleged wrongful conduct, then it necessarily follows that a creditor's injuries are only derivative of the debtor's injury and the cause of action belongs to the debtor's estate. *Id.* at 1285.

 Missouri courts would utilize the same test employed by the Fifth Circuit in *Educators Trust.* It is well settled under Missouri law that a corporation is the only party that may recover for its direct injuries. *Goldstein v. Studley,* 452 S.W.2d 75, 78 (Mo.1970); *Centerre Bank of Kansas City v. Angle,* 976 S.W.2d 608, 613 (Mo.Ct.App.1998); *21 West, Inc. v. Meadowgreen Trails, Inc.,* 913 S.W.2d 858, 871 (Mo.Ct.App.1996); *Peterson v. Kennedy,* 791 S.W.2d 459, 464 (Mo.Ct.App.1990); *Schick v. Riemer,* 263 S.W.2d 51, 54 (Mo. Ct.App.1953). Accordingly, the focus of whether the cause of action belongs to the corporation should center on relationship between the alleged injury and the corporation.[3] *21 West,* 913 S.W.2d at 871; *Peterson,* 791 S.W.2d at 463–64. Thus, Missouri law provides that if the corporation

**3.** The Court also notes that Welsh Carson's alleged malfeasance cannot be imputed to its principal, Bridge, under Missouri's version of the adverse interest rule. *See Lumbermens Mut. Cas. Co. v. Thornton,* 92 S.W.3d 259, 270 (Mo.Ct.App.2002).

sustains the direct harm from the alleged wrongdoing, then claims stemming from that wrongdoing belong to the corporation only. *Id.*

For example, in *Peterson,* the minority shareholders of a corporation brought a breach of fiduciary duty claim against a director of the corporation. *Id.* at 463. The essence of the minority shareholder's complaint was that the director caused the corporation to make a transfer that diminished the value of the corporation. *Id.* at 462–63. The court held that only the corporation had standing to assert the breach of fiduciary cause of action because the corporation was the party that was directly injured by the controlling shareholder's misconduct, even though the controlling shareholders may have breached a duty to the minority shareholders. *Id.* at 464. Therefore, Missouri courts follow the same test as utilized by the Fifth Circuit in *Educators Trust;* if the corporation suffers the direct injury that results from the malfeasance, then only it has standing to assert claims arising out of the malfeasance.

Here, even after accepting all of the allegations in the Consolidated Adversary as true and viewing those allegations in the light most favorable to Highland, Bridge was the party that was directly injured by Welsh Carson's wrongdoing. Highland maintains that it has standing to assert the Tort Claims because Welsh Carson made the alleged misrepresentations directly to it concerning the existence of potential purchasers of Bridge's assets. But the injury stemming from that misrepresentation was inflicted upon Bridge in that Highland would have prevented Welsh Carson from causing Bridge to make the Pre–Petition Transfers, which caused direct financial harm to Bridge. Accordingly, although Welsh Carson directed the misrepresentations at Highland,

Bridge was the direct recipient of the harm stemming from the misrepresentations.

Highland also contends that it has standing to assert the Tort Claims because it is a creditor, not shareholder, of Bridge. It is true that the reported cases in Missouri involve individual shareholders attempting to bring a direct action on their own behalf when the corporation has suffered the direct injury. But the fact that the reported cases involve suits by shareholders and not creditors does not negate the fact that under Missouri law, only a corporation, not its shareholders nor creditors, may maintain an action for the corporation's direct injury.

■ Missouri courts have recognized that the rationale underlying the rule that only a corporation may bring a cause of action for its direct financial injury is to protect the interest of all potential claimants of the corporation's assets, including voluntary creditors. *Centerre Bank of Kansas City, N.A.,* 976 S.W.2d at 613; *Peterson,* 791 S.W.2d at 464. Thus, the rule that a corporation only has standing to assert a claim for its direct injury prohibits any other party, either a stockholder or a creditor, from asserting that claim. This rule is particularly apropos when, as is the case here; the corporation is insolvent so that the creditors become the residual claimants to the corporation's unencumbered assets. *Sobchack v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.),* 17 F.3d 600, 606 (2d Cir.1994); *Prod. Resources Group, LLC v. NCT Group, Inc.,* 863 A.2d 772, 792 (Del.Ch.2004).

Highland additionally maintains that the Supreme Court's holding in *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) dictates that only it as a third-party creditor has the right to assert the Tort Claims against Welsh Carson. But *Caplin* merely

stands for the proposition that a trustee only has the statutory right to assert claims on behalf of the debtor's estate and may not assert claims on behalf of creditors, even if those claims are common to a large class of creditors. *Id.* at 429–30, 92 S.Ct. 1678. The Supreme Court in *Caplin* did not address the issue central to the analysis here, when does a cause of action belong to the debtor's estate. Accordingly, *Caplin* is not relevant to whether the Tort Claims belong to Highland or Bridge's estate.

In conclusion, the injury stemming from Welsh Carson's malfeasance as alleged in the Consolidated Adversary was directly inflicted upon Bridge. Thus, although Welsh Carson directed the misrepresentations at Highland, only Bridge had standing under Missouri law to assert the Tort Claims on the petition date. Thus, the Tort Claims are property of Bridge's estate under 11 U.S.C. § 541(a) that only Plan Administrator has standing to assert on behalf of Bridge's estate.

### 3. The Veil Piercing Claim belongs to Bridge's Estate.

Highland maintains that under binding Eighth Circuit precedent, only it can assert the Veil Piercing Claim. Highland's reading of the case law, however, is overly broad.

It is true that the Eight Circuit has held that generally only a third-party creditor may assert a veil piercing cause of action. *Mixon v. Anderson (In re Ozark Restaurant Equip.)*, 816 F.2d 1222, 1225–26 (8th Cir.1987). The rationale undergirding the Eighth Circuit's opinion is that because a court may generally only pierce the corporation's veil upon a showing by a third-party that it was injured by the corporate principals' abuse of the corporate form, only that third-party has standing to bring a veil piercing claim. *Id.* at 1225.

The Eighth Circuit noted *Mixon*, however, that applicable state law determines whether the creditor or the trustee has standing to bring the veil piercing claim. *Id.* at 1226 n. 7. In fact, the Eighth Circuit's based its holding in Mixon on its finding that only the third-party creditor had standing to bring the veil piercing claim under the specific facts of that case under Arkansas law. *Id.* at 1225–26. Thus, the specific holding in *Mixon* does not apply if applicable state law would allow the corporation only to bring a veil piercing action to recover for its direct injuries. *Id.* at 1226 n. 7 (noting that the outcome of the case could have been different if another state's substantive law applied).

As the Second Circuit has noted, *Mixon* then does not stand for the broad proposition that only a creditor may bring a veil piercing claim in all circumstances. *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 134 (2d Cir.1993). Rather, the proper analysis must focus upon whether the veil piercing claim belonged to the corporation on the petition date under applicable state law so that it became property of the corporation's estate under 11 U.S.C. § 541(a). *Id.; Mixon*, 816 F.2d at 1226. Therefore, the Court must examine Missouri law here to determine whether the Veil Piercing Claim belonged to Bridge on the petition date so that it became part of Bridge's estate under 11 U.S.C. § 541(a).

As this Court has previously noted, the general rule under Missouri law is that a court should only pierce the corporation's veil upon a showing by a third-party that it has been injured by an abuse of the corporate form. *Mann v. Michael Indus., Inc. (In re Inland Shoe Mfg. Co.)*, 90 B.R. 981, 985–86 (Bankr.E.D.Mo.1988) (*citing Osler v. Joplin Life Ins., Co.*, 164 S.W.2d 295, 298 (Mo.1942)). Thus, the

general rule in Missouri is that only a third-party creditor has standing to assert a veil piercing claim. *Mar–Kay Plastics, Inc. v. Reid Plastics, Inc. (In re Mar–Kay Plastics, Inc.)*, 234 B.R. 473, 481–82 (Bankr.W.D.Mo.1999); *Inland Shoe*, 90 B.R. at 986.

■■■ There are exceptions, however, to this general rule. Relevant to the instant case, the Bankruptcy Court for the Western District of Missouri has held that Missouri courts would allow a corporation to bring a veil piercing claim when the claim is linked to specific assets or transactions. *Block v. Warehouse Consultants, Inc. (In re Am. Serv., Inc.)*, 173 B.R. 650, 653 (Bankr.W.D.Mo.1994). The *Block* Court specifically held that under Missouri law, any *alter ego* action that attempts to hold the controlling shareholders liable for a specific transaction rather than the corporation's debts generally belongs to the corporation and not third-party creditors. *Id.* The Court agrees with the *Block* Court's analysis and holds that the Veil Piercing Claim is property of Bridge's estate for two reasons.[4]

First, the *Block* Court's holding is premised in part on the fact that a fraudulent transfer between two *alter ego* corporations is voidable by the transferor corporation under Missouri law. *Id.* (*citing S. Side Nat'l Bank v. Winfield Fin. Serv.*, 783 S.W.2d 140, 145 (Mo.Ct.App.1989)). Here, Highland's complaint is that Welsh Carson caused Bridge to make the Pre-

Petition Transfers to Savvis for insufficient consideration at a time when Welsh Carson controlled both corporations. Thus, the right to recover the Pre–Petition Transfers under Missouri law belongs to Bridge and is property of Bridge's estate.

An additional reason the Veil Piercing Claim is property of Bridge's estate under Missouri law is because allowing Highland to assert that claim would circumvent the well established rule that only a corporation has standing to assert claims for its direct injuries. Although Highland labeled its cause of action as a veil piercing claim in Count VIII of the Consolidated Adversary, Highland is seeking damages stemming from the Pre–Petition Transfers in that cause of action. And Bridge, not Highland, was directly injured by the Pre–Petition Transfers. Therefore, regardless of the label Highland attached to its causes of action against Welsh Carson, the fact remains that Welsh Carson's alleged wrongdoing inflicted harm directly upon Bridge. Thus, only Bridge has the right under Missouri law to assert those claims. *See S.I. Acquisition, Inc v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1153 (5th Cir.1987).

In conclusion, the Veil Piercing Claim relates specifically to the allegation that Welsh Carson caused Bridge to make the Pre–Petition Transfers to Savvis without adequate consideration when Welsh Carson controlled both corporations. Also, Bridge suffered the direct injury stemming from the Pre–Petition Transfers.

---

4. The Court notes that the vast majority of courts that have addressed this issue have found that a corporation itself may maintain a veil piercing action to recover for its direct injuries. *See e.g. St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 703–04 (2d Cir.1989); *Koch Refining v. Farmers Union Cent. Exch., Inc. (In re Koch Refining)*, 831 F.2d 1339, 1344–45 (7th Cir.1987); *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 (5th Cir.1987); *CBS, Inc. v. Folks (In re Folks)*,

211 B.R. 378, 387–88 (9th Cir. BAP 1997); *Tsai v. Buildings by Jamie, Inc. (In re Buildings by Jamie, Inc.)*, 230 B.R. 36, 43–44 (Bankr.D.N.J.1998); *In re Davey Roofing, Inc.*, 167 B.R. 604, 608 (Bankr.C.D.Cal.1994). There is, however, opposite authority. *See Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Engineered Prod. Co.)*, 102 F.3d 223, 226–27 (6th Cir.1996) (holding that Michigan law does not allow a corporation to assert a veil piercing claim under any circumstances).

Therefore, the Veil Piercing Claim is property of Bridge's estate under 11 U.S.C. § 541(a). Accordingly, only Plan Administrator has standing to assert the claim on behalf of Bridge's estate.

*4. Only Plan Administrator may prosecute the causes of action in the Consolidated Adversary under 11 U.S.C. § 544(b).*

■ Plan Administration also contends that the Consolidate Adversary is in essence a fraudulent conveyance action that only he can prosecute. Only a trustee has the statutory authority to assert a fraudulent conveyance cause of action under the Code. 11 U.S.C. § 544(b); *In re PWS Holding Corp.*, 303 F.3d 308, 314 (3d Cir. 2002). Thus, if a creditor's putative state law cause of action challenges the propriety of a pre-petition transfer because the debtor failed to receive adequate consideration, that cause of action belongs to the debtor's estate. *Nat'l. Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir.1999); *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983).

■ Because the purpose underlying 11 U.S.C. § 544(b) is to protect the trustee's ability to adequately administer the debtor's estate, the state law cause of action and the fraudulent conveyance cause of action need not have identical elements. *Ruppert Landscaping*, 187 F.3d at 441. Rather, as long as the putative state law cause of action has the same focus as a fraudulent conveyance action under 11 U.S.C. § 548(b), only the trustee has standing to bring the claim. *Id.; Litchfield Co. v. Anchor Bank (In re Litchfield Co.)*, 135 B.R. 797, 804 (W.D.N.C.1992).

■ The essential element of a fraudulent conveyance cause of action under 11 U.S.C. § 548(b) is that the debtor failed to receive reasonably equivalent value in exchange for the pre-petition transfer in dispute. *Pummill v. Greensfelder, Hemker & Gale (In re Richards Conover Steel, Co.)*, 267 B.R. 602, 607 (8th Cir. BAP 2001). The gravamen of Highland's complaint is that Welsh Carson made false misrepresentations to Highland to stave off an involuntary petition so that Welsh Carson could cause Bridge to remit the Pre–Petition Transfers to Savvis without adequate consideration. Thus, the alleged injury in the Consolidated Adversary is identical to the focus of a fraudulent conveyance cause of action under 11 U.S.C. § 548(b).

Highland counters by arguing that because the causes of action in the Consolidated Adverse are state common law claims, only a creditor may assert those claims. Highland's argument, however, misses the point. As illustrated above, even if the creditor nominally avers state law claims, if those claims are similar in focus to a fraudulent conveyance cause of action, only a trustee has standing to bring those claims regardless of how those claims are plead. *Ruppert*, 187 F.3d at 442. Accordingly, because the causes of action in the Consolidated Adversary have the same focus as a fraudulent conveyance cause of action under 11 § 548(b), only Plan Administrator has standing to bring those claims.

## CONCLUSION

Missouri law applies in determining if the Tort Claims and the Veil Piercing Claim are property of Bridge's estate under 11 U.S.C. § 541(a). Missouri law provides that any claim that stems from a direct injury to the corporation belongs to the corporation only. The claims contained in the Consolidated Adversary all flow from the Pre–Petition Transfers, which directly damaged Bridge. Thus, although the alleged wrongful conduct was directed at Highland, both the Tort Claims and the Veil Piercing Claim are property

835

of Bridge's estate under 11 U.S.C. § 541(a) that only Plan Administrator may prosecute.

Additionally, the claims in the Consolidated Adversary have the same focus as a fraudulent conveyance action under 11 U.S.C. § 548(b). Thus, although Highland nominally avers state law claims in the Consolidated Adversary, only Plan Administrator has the statutory right to assert those claims under 11 U.S.C. § 544(b). Accordingly, Plan Administrator's compromise with Welsh Carson under Bankr.R. 9019 includes all of the claims against Welsh Carson asserted in the Consolidated Adversary, including the claims nominally asserted by Highland.

An Order consistent with this Memorandum Opinion will be entered this date.